## BAUGUSS et al. v. BAUGUSS.

### No. 13590.

Court of Civil Appeals of Texas. Dallas.

Feb. 9, 1945.

Rehearing Denied March 16, 1945.

E. A. Landman, of Athens, for appellants.

Justice, Moore & Justice, of Athens, for appellee.

LOONEY, Justice.

This case involves title to 240 acres of land in Henderson County, Texas; the parties are L. B. Bauguss, his three sons and two married daughters. The land formerly belonged to the community of Mr. Bauguss and his wife, Laura E., now deceased. Before her death, however, the land was sold under a trust deed executed by them to secure an indebtedness to the Federal Land Bank of Houston, Texas, and at the foreclosure sale was bought in by their son, Vernon, now a soldier stationed somewhere in the State of Illinois, but was present and testified at the trial.

After Vernon purchased the land at the foreclosure, his mother and father conveyed

to him their interest in the property, and thereafter Vernon executed a power of attorney appointing his father, L. B. Bauguss, agent and attorney in fact with power to possess, manage, control, sell and convey the property, under which, on December 14, 1941, he conveyed same by warranty deed to Cecil, one of his sons, for the recited consideration of $10 and other considerations. In regard to what the "other considerations" should be, the parties were in accord in these particulars: that is, Cecil was to pay all taxes against the land, also the balance of an indebtedness against the land held by the Federal Land Bank of Houston (which when paid by Cecil amounted to $545.40); that Cecil would execute a note for $3,500 to run 15 years, payable in 30 semi-annual installments, secured by a lien on the land and a deed of trust, and would convey his undivided interest in certain real estate situated in the City of Dallas, Texas, inherited from his deceased mother. Although there was no disagreement as to the above, the parties did disagree in the following respects: that is, L. B. Bauguss contended and later testified at the trial that the note for $3,-500 was to be made payable to himself and to bear 6% interest; that the undivided interest in the Dallas property should also be conveyed to him, and that these documents were to be executed by Cecil as soon as he, L. B. Bauguss, could have same prepared. On the other hand, Cecil contended and later testified that he was not to execute such documents until he paid the last installment due on the indebtedness held by the loan company, which, as disclosed by the record, was on December 2, 1943; also contended that the note for $3,500 was to bear 5% interest per annum instead of 6%, was to be made payable to Vernon Bauguss, owner of the land, and not to the attorney in fact; and that the conveyance of his undivided interest in the Dallas real estate also was to be made to Vernon and not to the attorney in fact. Over a year after the conveyance to Cecil, L. B. Bauguss prepared the note, trust deed and conveyance to the Dallas property in accordance with his version of the agreement, and on December 19, 1942, presented same to Cecil to be executed, which he refused to do because not in harmony with his understanding of the agreement.

Thus matters stood on May 5, 1943, when L. B. Bauguss and another of his sons, W. C. (Craig) Bauguss, as plaintiffs, filed this suit, and on August 27, 1943, filed their second amended original petition on which trial was had, complaining of the other children—Cecil, Vernon, Evelyn Varner and husband, Irma Christian and husband (the two daughters), as defendants. The first count of this pleading is a formal action of trespass to try title, whereby plaintiffs sought recovery of the land and rents; in the second count conveyance of the land to Cecil under power of attorney was set up, plaintiffs alleging that while at that time legal title was in Vernon, he held the land in trust for the benefit of plaintiffs and defendants; that equitable title to one-half the land (or in the alternative one-third) was in plaintiff L. B. Bauguss, and that the other parties owned the remainder in equal shares. Plaintiffs then alleged the consideration for the conveyance to Cecil to be as contended by L. B. Bauguss heretofore stated; that Cecil had failed and refused to comply with his agreement, that is, to execute the note, deed of trust and conveyance of the real estate situated in Dallas, and had failed to pay the indebtedness due the land bank at Houston; wherefore, plaintiffs prayed that the deed to Cecil, executed under and by virtue of the power of attorney, be cancelled and held for naught, etc. In the third count plaintiffs sought partition of the land in accordance with the interest of the parties heretofore set out. (In a pleading filed November 20, 1943, plaintiffs alleged that the two daughters, Evelyn Varner and Irma Christian, claimed no interest in the land, and that they go hence and recover their costs.)

Cecil pled a general denial and plea of not guilty to the first count of plaintiffs' second amended original petition; to the second count alleged facts somewhat at length in the nature of special denials; pled his own version of the agreement; alleged payment of the Federal Land Bank's indebtedness as the installments matured, and his readiness to pay the last installment when due (December 15, 1943); also tendered in court all instruments he had agreed to execute, properly prepared and executed; and, in answer to the third count seeking partition, denied that any ground for partition existed; that he was sole owner of the land subject to the indebtedness admittedly due Vernon, and denied that either of the other parties, plaintiffs or defendants, owned any interest whatever in the land.

On November 18, 1944, Vernon, in the role of plaintiff, filed a plea of intervention complaining of Cecil, asserting ownership of the land, the first count of the plea being in form an action of trespass to try title for recovery of the land and rents; praying: "Wherefore, premises considered, defendant Cecil Bauguss already having answered herein and having been served as provided by law with a copy of this Intervention, Intervener prays that on the trial of this suit and final hearing he have judgment for title and possession for the above land and premises and for writ of restitution, and for his rentals and damages and costs of suit, and all such other and further relief, general and special, in law and equity, to which he may be entitled, and for which he will ever pray." The second count alleged execution of the power of attorney appointing his father, L. B. Bauguss, attorney in fact with authority to sell and convey the property; and that as such he conveyed the land to Cecil; alleged the consideration to be as alleged by plaintiffs heretofore set out; also alleged the failure and refusal of Cecil to comply with his agreement, etc., just as alleged by plaintiffs; prayed that the deed conveying the land to Cecil be cancelled, held for naught, and that intervener recover the land, rents, etc.

The testimony was sharply conflicting on the pivotal issue of fact; that is, in regard to the agreement of Cecil. The testimony of L. B. Bauguss, one of the plaintiffs, fully supported his contention as alleged in the second amended original petition in regard to the matter; conversely, however, the testimony of Cecil and the evidence offered by him supported his contention as alleged in his answer heretofore set out. The record also discloses that Cecil paid the indebtedness due the Federal Land Bank of Houston as the installments matured, and at the trial tendered to both L. B. Bauguss, plaintiff, and Vernon, intervener, the $3,500 note payable to Vernon, the deed of trust securing same, and the deed conveying the Dallas property to Vernon, all properly prepared and acknowledged according to Cecil's version of the agreement, but the tender was rejected by both. Vernon testified in effect that while he held legal title to the land, it was held in trust for all the children "share and share alike".

The court submitted the case to a jury on special issues. In issue No. 1 the jury was asked: "Do you find from a preponderance of the evidence that the defendant Cecil Bauguss agreed with L. B. Bauguss in connection with the execution of the deed dated October 14, 1941, substantially as follows";—here the court summarized the version of the agreement as contended by plaintiffs and intervener, to which the jury answered "No". In issue No. 3 the court submitted: "Do you find from a preponderance of the evidence that L. B. Bauguss agreed with Cecil Bauguss in connection with the deed dated October 14, 1941, substantially as follows";—here the court summarized the version of the agreement as contended by Cecil, to which the jury answered "Yes"; and then, in answer to special issue No. 4, the jury found that Cecil had not rescinded the agreement as contended by plaintiffs and intervener.

On this verdict the court adjudged that plaintiffs and intervener were not entitled to have the deed in question cancelled, or to recover the land sued for; that Cecil had complied with the terms of the trade and had executed the instruments in full compliance with the terms of the conveyance, and had tendered same in court; thereupon the court entered judgment that plaintiffs and intervener take nothing by reason of the suit as against the defendants, Cecil, Evelyn Varner and husband E. C. Varner, and Irma Christian; that they go hence and recover all costs; that the deed of trust, note and warranty deed tendered in court by Cecil be delivered to Vernon, in trust, however, for himself and the parties to the suit other than Cecil Bauguss and his wife.

The court having overruled their motion for a new trial, plaintiffs and intervener excepted, gave notice of, but plaintiffs alone perfected the appeal; intervener seems to have submitted to the judgment.

At the outset appellee urges objections to the consideration of assignments of error upon which appellants base their points, contending that these assignments are too general and fail to acquaint the court with the points relied upon, as required by Texas Rules of Civil Procedure, Rules 321, 322 and 374. This motion, in our opinion, is well taken. Appellants' first point of error is based upon assignments Nos. 5, 6, 7 and 8 of the motion for a new trial; the second point is based upon assignments Nos. 1, 2, 3 and 4 of the motion; and the third point is based upon

assignments Nos. 5, 6, 7 and 8 of the motion.

The assignments copied from the motion for a new trial, upon which the points of error are based, are these: "(1) The answer of the jury to Special Issue No. 1 is against the weight and preponderance of the evidence. (2) The answer of the jury to Special Issue No. 1 is not supported by legal and competent testimony. (3) The answer of the jury to Special Issue No. 3 is against the weight and preponderance of the testimony and not supported by legal and competent testimony. (4) The answer of the jury to Special Issue No. 4 is contrary to the preponderance of the testimony. (5) The Court erred in overruling their objections and exceptions to the Court's Charge. (6) The Court erred in failing and refusing to give their requested Special Issue No. 5 to the jury. (7) The Court erred in overruling their Motion for Judgment Notwithstanding the Verdict. (8) The Court erred in overruling their Motion for an Instructed Verdict."

■ The rules referred to above, in our opinion, are controlling. Rule 322 reads: "Grounds of objections couched in general terms—as that the court erred in its charge, in sustaining or overruling exceptions to the pleadings, and in excluding or admitting evidence, the verdict of the jury is contrary to law, and the like—shall not be considered by the court". The assignments of error in question are of the same pattern as the grounds of objection condemned as too general for consideration by Rule 322, and are to be treated as waived under Rule 374. Hence the motion is sustained.

Appellants' fourth point of error is properly based, and is as follows: "A jury that retires under charge of the court to consider a case on special issues, and such charge instructs them that they are not to be concerned with the effect their answers may have upon the rights of the parties, and prior to their verdict they inform the court in writing that the jury favors one party but does not know whether or not an issue should be answered Yes or No, in such event the jury violates the instructions in the court's charge and is guilty of misconduct of the jury for which misconduct the verdict should be set aside, and it is error for the court to refuse to set aside such a verdict. (Point germane to assignment of error No. 9)."

The record discloses that after the jury retired they returned and, through their foreman, submitted to the court in writing the following inquiry: "We are all in favor of Cecil Bauguss, how to answer question No. 1, 'Yes' or 'No'?" to which the court answered in writing as follows: "The question you ask cannot be answered by the court. You must be governed by the instructions contained in the court's charge as you now have it." Among others, the court's charge contained the following instruction: "You are not to be concerned with the effect your answers may have upon the rights of the parties, nor upon the judgment to be rendered herein by the court." After this episode the jury retired, and later answered the special issues as heretofore set out; and although in favor of Cecil, insofar as disclosed by the record, the jury was guided alone by the court's charge.

■ It has been repeatedly held that it would be misconduct for a jury to agree in advance as to which of the litigants should prevail, and then attempt to answer the issues in such a way as to accomplish that end. However, we do not think it would be misconduct for jurors of average intelligence, after listening to the evidence adduced and argument of counsel, to have an impression or even a definite conviction as to who should prevail; such, being involuntary and inescapable, cannot be condemned. The conduct of the jury which is condemned consists in arbitrarily answering issues so as to effectuate a beforehand agreement in favor of one of the parties. See Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770, by the Commission; also Tex.Jur., Vol. 41, p. 1212, Sec. 347, and the authorities cited.

■ The jurors were not called to testify; hence there is no evidence in the record from that source showing or tending to show that, irrespective of the facts, they arbitrarily attempted to answer issues so as to bring about a result favorable to appellee. In the absence of any proof whatever in regard to that matter, we think the presumption must be indulged that the jury did not do so, and that they followed the instructions of the court; in fact, through their foreman it was shown indisputably that the jury did not know whether to answer issue No. 1 "yes" or "no", so as to favor appellee. Under Rule 327 the burden was upon appellants not only to prove misconduct within the

meaning of the law, but that same was material and probably resulted in injury to them. See Craghead v. United Transports, Inc., Tex.Civ.App., 170 S.W.2d 325; Inglett v. Commercial Standard Ins. Co., Tex.Civ.App., 171 S.W.2d 914, writ refused want of merit; and Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. Point of error No. 3 is overruled.

In point of error No. 5 appellants contend that the judgment of the court below should be reversed and the cause remanded because they were deprived of a complete statement of the facts. The record discloses that the trial court granted appellants an extension of ten days within which to file a statement of the facts and bills of exceptions, and that this court also granted an extension of fifteen days. Later appellants' counsel approved and signed a statement of the facts, which, after being approved by the trial court, was filed in this court August 11, 1944, purporting to be "a full, true and complete statement of all the material facts introduced in evidence during the trial, etc." In the face of this record, appellants insist that they are entitled to reversal because certain exhibits, Nos. 3, 4, and 5, introduced by appellee, were not copied into and made a part of the statement of facts, because, as disclosed by the reporter's notes, the exhibits were not in his possession. The above is all the information furnished this court; the exhibits are neither described, contents stated, nor their materiality shown; the record is also silent as to what, if any, efforts were made by the appellants or their counsel to obtain and furnish these exhibits to the reporter, although granted an extension of twenty-five days.

We do not think it enough for appellants to simply call attention to the reporter's notes stating that these exhibits could not be copied because not in his possession; in order to be entitled to reversal, it was incumbent upon appellants to show that the omission was not due to their fault or negligence or that of their counsel, and further that the omitted matter was material to their appeal—this they wholly failed to show; see Tex.Jur., Vol. 3, p. 638, Sec. 448, and authorities cited.

Although not disclosed in appellants' brief, examination of the statement of facts reveals that the omitted exhibits were the note for $3,500 payable to Vernon, the deed of trust securing same, and the deed conveying the Dallas property to Vernon, all prepared, signed and properly acknowledged in accordance with Cecil's version of the agreement introduced in evidence by him and in open court tendered to L. B. Bauguss and Vernon—and by them refused. Thus it appears that the omitted matter was material alone to appellee; but even if material to the appellants, the exhibits, that is, the note, trust deed and deed of conveyance, were fully described, their terms and contents stated in the testimony of Cecil before being formally introduced; in fact, it seems that their introduction was simply for the purpose of making the tender. Because appellants failed to show that without their fault or negligence or that of their counsel, facts material to their appeal were omitted from the statement of facts, the point of error under consideration is overruled.

All points of error properly presented have been considered, are overruled, and the judgment of the court below is affirmed.

Affirmed.