**Anna B. FORD, Appellant,**

v.

**Clyde B. EMERICH et al., Appellees.**

**No. 13606.**

Court of Civil Appeals of Texas.

Houston.

Feb. 2, 1961.

Rehearing Denied March 2, 1961.

Gerald S. Gordon, Houston, Milton Schwartz, Houston, of counsel, for appellant.

Wm. F. Jackson, J. C. McEvoy, Hempstead, for appellees.

WERLEIN, Justice.

This is a trespass-to-try title suit. The original parties-plaintiff were dismissed in the court below prior to trial, and the case proceeded to trial on the cross-action of Clyde B. Emerich et al. (appellees), against cross-defendant, Anna B. Ford (appellant), individually and as sole devisee and independent executrix of the estate of Julia May Anderson, deceased, and various other parties and their unknown heirs. The nonappearing cross-defendants cited by publication were represented by E. R. Stonecipher, attorney ad litem. Only Anna B. Ford individually appeals from the judgment of the court, based upon the jury verdict, decreeing that appellees recover from the cross-defendants the title and possession of the tract sued for, a part of the R. O. Lusk Survey, Abstract 212, consisting of 80 acres in Waller County, Texas, and 301 acres in Grimes County, Texas, being the land described in deed dated September 10, 1929 from Percy Allam et al. to T. L. McNeill, subject to a ¹⁄₁₆ of ⅛ of the gravel and mineral rights reserved in deed dated June 19, 1931 from Maurice Horowitz and wife to Mathilda Schoenfeld.

Appellant first complains that the trial court erred in denying appellant's motion for an instructed verdict based upon appellees' failure to prove record title. T. L. McNeill is the agreed common source of title immediately prior to January 3, 1930. Appellant claims record title under that certain trustee's deed from H. C. Sisco, substitute trustee. Appellees assert that such deed is void and that they have record title through a regular chain of title from the common source. In order to pass upon the question, it is necessary to consider the evidence relating thereto.

On March 30, 1927, T. S. Masterson conveyed to appellant and her husband, Jack H. Ford, certain property in Houston. The unpaid purchase money evidenced by twelve notes aggregating the sum of $48,-000 executed and delivered by the Fords to Masterson were additionally secured by a deed of trust of the same date from the Fords to Jas. L. Shepherd, Trustee for Masterson. On January 7, 1930, the Fords were delinquent in the payment of $47,000 due on said notes, and on such date a deed of trust was given by the Fords, joined by Leroy J. Boutte, their son-in-law, covering the 381 acres involved in this suit and also a 193 acre tract not involved herein, both such tracts being then owned by said Leroy J. Boutte and wife. The January 7, 1930 deed of trust was given as additional and collateral security for the payment of the balance of the indebtedness in the sum of $47,000 due on the 1927 notes owed by the Fords, all of which had been declared and become due at that time. Thereafter, on March 4, 1930, Shepherd as trustee sold the Houston property under the 1927 deed of trust and it was bought in by Masterson for $37,000 which was credited on the indebtedness evidenced by said notes.

After the 1930 foreclosure and sale under the 1927 deed of trust, in an effort to obtain possession of the Houston property from the Fords who were not inclined to move therefrom, a deal was worked out in August of 1930 under which the Fords agreed to move and vacate the property and give Masterson a quitclaim deed thereto and bill of sale for whatever furniture was left there, and in consideration therefor Masterson agreed to release the balance due on said notes. This agreement was carried out on the part of the Fords by execution of a quitclaim and bill of sale to Masterson, and by Masterson executing a release of the 1930 deed of trust and lien on the 381 acres involved in this suit and said 193 acres, and also an instrument cancelling the balance of the indebtedness. Both the release and instrument cancelling the indebtedness were delivered to Mr. and Mrs. Ford personally by Mr. Shepherd as Masterson's agent on or about September 18, 1930.

Prior to the execution and delivery of the 1930 release, Boutte and wife by general warranty deed dated June 5, 1930 conveyed the property in question to appellant's son-in-law, Maurice Horowitz, and wife, Helen Horowitz. By general warranty deed dated June 19, 1931, after the execution and delivery of said release and cancellation instrument, Horowitz and wife conveyed the property subject to said mineral reservation, to Mathilda Schoenfeld as her separate property; no lien was reflected by such deed.

Despite the fact that appellant received the 1930 release and instrument cancelling the indebtedness, she apparently induced Julia May Anderson to procure an assignment from Masterson on July 3, 1939 of what had been the unpaid balance of the indebtedness after sale under the 1927 deed of trust although at such time such indebtedness did not exist and had not existed for nearly nine years, since it and the lien securing it had been unconditionally cancelled and released. In her deposition Mrs. Ford, herself, testified that the entire indebtedness had been paid off by giving him (Masterson) the house.

The 1930 release given appellant was not filed in Grimes County until January 15, 1940, which was after appellant and Julia May Anderson had procured the assignment from Masterson. On April 15, 1940, nearly 10 years after Boutte and wife had conveyed the property by general warranty deed to Horowitz and wife, the Bouttes executed an ex parte affidavit in which they made several erroneous statements such as that they had signed the Masterson notes and that the $37,000 for which the Harris County property sold at trustee's sale was credited on the *judgment,* and that such property was sold about September, 1930, whereas the sale was March 4, 1930. Actually, the release and cancellation were executed and delivered to appellant in September, 1930. They then stated in their affidavit that they and Jack H. Ford and wife, Anna B. Ford (appellant and mother of Mrs. Boutte), the makers of the notes acknowledged in writing the validity of $10,000 balance due on the notes and promised to pay the same to Masterson or order on or before the due date of the last two of the Masterson notes. It is significant that this affidavit was executed after Masterson had assigned the nonexisting balance of the indebtedness to Julia May Anderson, mother of the wife of appellant's son, William Ford. Moreover, the Bouttes never signed any notes whatever and had conveyed the property, as stated, nearly ten years before execution of the affidavit.

The substitute trustee's deed, under which appellant claims, bears date March 9, 1942 and was filed for record March 25, 1942. Mathilda Schoenfeld conveyed the property to appellees, Clyde B. Emerich and wife, by deed dated April, 1952. Appellant claims as sole devisee under the will of Julia May Anderson, which will she caused to be admitted to probate in 1955 in Bexar County. No inventory was filed in such estate, and appellant testified no inventory was necessary because the testatrix did not own anything.

Mathilda Schoenfeld, under whom appellees deraign title, was not a party to the 1930 deed of trust, nor was she ever indebted to Masterson or anyone else in connection with the lands involved in this law suit. She did not assume or take subject to any indebtedness, since none existed at the time she purchased the property. The 1930 deed of trust under which appellant claims title was given as collateral security for a debt owed by appellant and her husband, and not owed by the Bouttes who owned the property in question at such time. The substitute trustee's deed covers only the 301 acres of land in Grimes County, and does not purport to cover the 80 acres in Waller County.

The jury found in answer to special issues, (1) the lien created by the deed of trust dated January 7, 1930, was released by T. S. Masterson in September of 1930, and (2) such instrument dated September 10, 1930, signed by T. S. Masterson, was actually delivered to Jack H. Ford and wife, Anna B. Ford, prior to July 3, 1939 (the date of the assignment from Masterson to Julia May Anderson). Such findings are not attacked by appellant in this Court.

■ We have concluded that the trustee's sale under the deed of trust of January 7, 1930, was void, and not merely voidable, and, therefore, no title passed thereunder. The rule has long been established in this State that where a deed is absolutely void a suit at law in trespass-to-try title may be maintained to recover the land without setting the deed aside, and the statutes of limitation governing actions for the recovery of land apply. The fact that the trustee's deed may appear regular on its face and it was necessary for appellees to go behind the deed and show by parol testimony the invalidity of the sale is immaterial. Slaughter v. Qualls, 1942, 139 Tex. 340, 162 S.W.2d 671.

■ A trustee has no power to sell a debtor's property, except such as may be found in the deed of trust. The sale is authorized only upon default by the debtor. In the instant case the cancellation of the balance of the indebtedness and release of the lien on the 381 acres terminated the power of the trustee to sell the same, so that the subsequent sale made by the substitute trustee was void and conferred no title upon Julia May Anderson. Schneider v. Sellers, 98 Tex. 380, 84 S.W. 417. In such case the deed is subject to collateral attack. Smith v. Allbright, Tex.Civ.App., 279 S.W. 852, reversed on other grounds, Tex.Com.App., 5 S.W.2d 970.

■ In Bowman v. Oakley, Tex.Civ. App., 212 S.W. 549, 552, writ ref., cited with approval in Slaughter v. Qualls, supra, it was held that where the appellants had made no inquiry as to whether the substitute trustee had been empowered to make the sale by having been requested so to do, they assumed at their peril that the trustee had such power. Since the trustee did not have such power, the court held the sale void. The court stated the general rule is stated in 39 Cyc. 1892, "* * * A purchaser under a power purchases at his peril, and if there is no subsisting power or authority to sell, no title is acquired by the purchaser."

Appellant contends that the ex parte affidavit signed by Leroy J. Boutte and wife, Mabel Boutte, on April 15, 1940 is a renewal and extension by the Fords and Bouttes of said balance of the indebtedness and lien securing the same, and that since at the time the Horowitzes sold the property to Mrs. Schoenfeld such balance of indebtedness, though then past due and payable, was not barred by limitation, Mrs. Schoenfeld purchased the property subject to such balance of indebtedness which could be renewed and extended without her joining in or consenting to the extension. They rely upon the case of Texas Land & Mortgage Co. v. Cohen, Tex.Com.App. 1942, 138 Tex. 464, 159 S.W.2d 859, 861. That case is distinguishable from the instant case in several particulars. In the

first place, the extension agreement entered into in the Cohen case was executed prior to the 1931 amendment of Article 5520, V.A.T.S. Acts 1931, 42nd Leg., p. 230, ch. 136, § 2. The amendment provides:

"The lien created by deeds of trust or other mortgages may be extended by an agreement in writing by the *party or parties primarily liable for the payment of such indebtedness,* and filed and recorded in the manner provided for the acknowledgment and record of conveyance of real estate." (Emphasis supplied.)

Prior to this amendment the extension agreement could be executed "by the party or parties obligated to pay such indebtedness *as extended* * * *" (Emphasis supplied.)

The ex parte affidavit in question, if it could possibly be construed as an extension agreement, was not signed by the Fords who were the parties primarily liable for the payment of the indebtedness. Moreover, Article 5520, V.A.T.S., has no application whatever to the present case in which appellant must rely upon a renewal and extension of an indebtedness which had been paid in full and unconditionally released, and was not in existence at the time the property was purchased by Mrs. Schoenfeld. Such Article has to do only with lien debts, which though barred by limitation still exist, and which may be extended, except as to bona fide third persons dealing with the property without actual notice thereof. It surely does not authorize or permit as against a third party with no notice thereof and not a party thereto the resurrection of a debt extinct and nonexistent at the time the property was acquired by such third party for a valuable consideration.

█ Furthermore, it is our view that the ex parte affidavit cannot be construed as a renewal and extension agreement, not only because it was not signed by the Fords, but also because it merely refers to some other writing which was never produced or introduced in evidence, and does not in itself contain any promise to pay the alleged indebtedness. It would be utterly ineffective to extend an existing indebtedness, much less an indebtedness and lien that had been extinguished. As to Mrs. Schoenfeld, it is merely an ex parte hearsay statement which was inadmissible in evidence. It will be noted also that the affidavit does not state when the Fords and Bouttes are supposed to have acknowledged in writing the validity of the $10,000 balance due and promised to pay the same. If they ever did execute such writing, which is not in evidence, it could have been prior to the execution and delivery of the cancellation instrument and release.

Under the authorities hereinabove cited, the trustee's deed to Julia May Anderson is void so that she could not be a bona fide purchaser. See also Stubbs v. Lowrey's Heirs, Tex.Civ.App., 253 S.W.2d 312, writ ref., n. r. e., in which it was held that where a debt is barred by limitation, the authority of the trustee to sell expires and a sale made by him is void. A fortiori would a sale made by a trustee after the entire indebtedness has been paid and released be void. Mrs. Anderson was not even a bona fide purchaser of the indebtedness since at the time of the assignment to her on July 3, 1939, the notes had all been declared due more than nine years previously and were barred by the four year statute of limitation. Vernon's Ann.Civ.St. art. 5527. She had notice thereof through the 1930 deed of trust under which, according to appellant, she acquired title to the property, since such deed of trust recites that the notes had been declared and become due. Continental Nat. Bank of Fort Worth v. Conner, 1948, 147 Tex. 218, 214 S.W.2d 928; art. 5935, § 52, V.A.T.S.

Under no circumstances could appellant, devisee under Mrs. Anderson's will, be a bona fide purchaser. She knew that the indebtedness had been satisfied in full and that the lien had been unconditionally released. She was a party to that trans-

action and also a party to procuring the assignment from Masterson of an indebtedness that did not exist.

■ Appellant also asserts that cross-plaintiff's suit, which was not filed within ten years of the trustee's sale, was barred under Article 5523a. We do not agree. As stated in Campsey v. Jack County Oil & Gas Association, Tex.Civ.App., 328 S.W.2d 912, 916, writ ref., n. r. e.:

> "Article 5523a, as shown by the emergency clause, 41st Leg., Acts 1929, Chap. 181, P. 394, was for the purpose of establishing a period of limitation in which suits may be brought for the recovery of lands on 'technical defects.'"

■ In the instant case suit was brought in trespass-to-try title to recover property allegedly sold by a substitute trustee long after the indebtedness and lien had been completely discharged and extinguished, so that the trustee had no power or authority to execute the trustee's deed. Such is not a "technical defect" as is barred by Article 5523a. See also 28 Tex.Jur., § 126, p. 290; Slaughter v. Qualls, supra. Moreover, appellant did not plead limitation under Article 5523a, and therefore may not now urge the same. Rule 789, Texas Rules of Civil Procedure; 28 Tex.Jur., p. 290, § 196.

We overrule appellant's contention that the trial court erred in denying her motion for new trial on the ground of jury misconduct in answering issues in support of a preconceived determination of the case.

Juror Haney testified there was discussion that if the jurors voted on the first issue in one way, then the other issues would have to be voted on to coincide with it; that more of the discussion was on the first issue and very little on the other issues; that he thought he knew the results of the answers to the issues; that practically all were discussed prior to voting on the first issue; and that there was some discussion as to how the ownership would be as to the outcome of the issues. He also tes-

tified that he wasn't actually taking into full consideration the result as to the outcome of answers to the issue; that his consideration was in answering the questions in the way "we thought they should be answered, as far as to say who got the land, I do not know either party"; that they discussed slightly the issue on limitation; that he answered each and every issue separately based on the evidence discussed; that in voting on each issue the jurors could vote any way they pleased; and that the answers reflected their verdict.

Jury foreman Wallingford testified that in answering the issues they talked and voted on each issue separately as they came to them, and that there was quite a bit of discussion on all the issues; that they were not unanimous at first on Issue No. 1; that after voting unanimously on Issue No. 1, they read Issue No. 2, and that there was more discussion on Issues 4 and 5 (the adverse possession issues) "than on any I ever was in a jury room on. We really discussed it"; that he knew who was going to get the land; and that the issues were all voted unanimously on and the answers reflected the jury verdict, and his.

We think the foregoing testimony amply supports the trial court's implied finding that there was no preconceived determination of the case or jury misconduct. There were only four very simple issues numbered 1, 2, 4 and 5. The fact that juror Wallingford thought he knew who was going to get the land, is of no significance. We think any individual of average intelligence after hearing the case tried and answering the issues, would have an idea as to who was going to get the land. There seems to be no reason why a juror should be expected to have less than average intelligence. The affidavit and testimony of Haney consist largely of generalizations, opinions and conclusions, without an iota of testimony of any agreement entered into by any of the jurors that they would vote on the other issues in a manner to coincide with their answer to Special Issue No. 1.

As to whether any jury misconduct occurred, is a question of fact for the trial court. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. Rule 327, Texas Rules of Civil Procedure, casts the burden on the party asserting misconduct to establish the same and probable injury therefrom. City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259. Of course, the effect of proven misconduct is a question of law for the trial and appellate courts.

After a careful examination of the entire record in the case, we are of the opinion that appellant has failed to establish either jury misconduct or probable injury. The cases of Prudential Fire Ins. Co. v. United Gas Corporation, 1946, 145 Tex. 257, 199 S.W.2d 767; Bauguss v. Bauguss, Tex. Civ.App., 186 S.W.2d 384, writ ref., w. m., relied upon by appellant are distinguishable. They involve agreements between jurors in advance as to which party should prevail and then the answering of special issues in such way as to effectuate such agreement. See Lyons v. Cope, Tex.Civ.App., 217 S.W. 2d 116; Trousdale v. Texas & New Orleans Railroad Co., 1955, 154 Tex. 231, 276 S.W. 2d 242.

Appellant's Point No. 5 with respect to improper argument is overruled. There is nothing in the record setting out the argument complained of or any objection or exceptions thereto. Hence, there is nothing before this Court.

We have carefully read the statement of facts and record, and have concluded that there is no evidence which warranted the submission of Special Issue No. 4 involving adverse possession by appellees for a period of ten years or longer. It follows that the jury's finding that there was such adverse possession is so against the great weight and preponderance of the evidence as to be manifestly wrong. This conclusion, however, does not in any way affect our holding that appellees have established a good record title to the property in question.

Appellant asserts that the trial court erred in taxing against her the fee of the attorney ad litem and publication costs. The court in its decree, entered November 28, 1959, taxed against appellant all costs of suit accruing after May 16, 1959, the date the original plaintiffs were dismissed from the case. In her brief, appellant states that "The Trial Court taxed publication and attorney ad litem costs against the appellant, and subsequently overruled appellant's motion to retax the costs to the plaintiffs." Appellees in their brief in effect deny that publication costs were taxed against appellant. They state that all costs prior to May 16, 1959 have been paid by appellees, including costs of two citations by publication. There is nothing in the record to show that there were more than two citations by publication. Appellees do not deny, however, that the fee for the attorney ad litem was taxed against appellant. Under Rule 419, T.R.C.P., this Court may accept as correct appellant's statement with respect to the attorney ad litem fee since not challenged by appellees. While we do not find in the record any motion to retax costs, the court in overruling the motion for new trial stated that it also overruled the motion to retax costs. Appellant duly excepted.

It is our view that under the decision of our Supreme Court in Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81, the fee decreed the attorney ad litem should be taxed against appellees who, as cross-plaintiffs, recovered the land in question.

Judgment of the trial court is accordingly reformed so as to adjudge that appellees have and recover of and from appellant, Anna B. Ford, all costs of suit accruing after May 16, 1959, with the exception of the $300 fee allowed the attorney ad litem, which fee is taxed against appellees. The judgment of the trial court, as reformed, is affirmed.

Reformed and affirmed.