ACCEPTED
03-15-00522-CV
8023248
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/30/2015 11:04:37 PM
JEFFREY D. KYLE
CLERK

# No. 03-15-00522-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/2/2015 9:03:00 AM
JEFFREY D. KYLE
Clerk

*In The Third Court of Appeals*

## MICHAEL W. SCHUETZ AND JAMIE K. SCHUETZ,

*Appellants,*

### v.

## SOURCE ONE MORTGAGE SERVICES CORPORATION; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; CITIMORTGAGE, INC.; AND BARRETT DAFFIN FRAPPIER TURNER & ENGLE, ROBERT FERGUSON, AND BARBARA FERGUSON,

*Appellees,*

Appeal from Cause No. C2013-1445C,
274th Judicial District Court, Comal County; Hon. Dib Waldrip, Presiding

# APPELLANTS' BRIEF

CASEY LAW OFFICE, P.C.
   Stephen D. Casey
   State Bar No. 24065015
   info@caseylawoffice.us
595 Round Rock West Drive, Suite 102
Round Rock, Texas 78681

## STATEMENT REGARDING ORAL ARGUMENT

The legal question here—applicability of the federal prohibition of foreclosure without face-to-face counseling, appears to be a matter of first impression for this Court. Second, the lower court misapplied the standard of review in a specific way to the facts. For those two reasons, oral argument is requested.

## IDENTITIES OF PARTIES AND COUNSEL

**Petitioners:**                 Michael and Jamie Schuetz

**Counsel for Petitioners:**     Casey Law Office, P.C.
                                 Stephen D. Casey
                                 info@caseylawoffice.us
                                 State Bar No. 24065015
                                 595 Round Rock West Drive, Suite 102
                                 Round Rock, Texas 78681

**Respondents:**                 Citimortgage, Inc., as successor to Source
                                 One Mortgage Corporation;
                                 Mortgage Electronic Registration Systems,
                                 Inc. ("Citi and MERS")

                                 Barret, Daffin, Frappier, Turner & Engel
                                 ("BDFTE")

                                 Robert and Barbara Ferguson ("Fergusons")

**Counsel for Respondents:**     *Citi and MERS*
                                 John Ellis
                                 dfoster@lockelord.com
                                 jellis@lockelord.com
                                 jthomason@lockelord.com
                                 LOCKE LORD LLP
                                 600 Congress Avenue, Ste 2200
                                 Austin, TX  78701

                                 *BDFTE*
                                 Mark Hopkins
                                 mark@hopkinswilliams.com
                                 12117 Bee Caves Road, Ste 260
                                 Austin, TX 78738

*Fergusons*
David Pfeuffer
170 E. San Antonio Street
New Braunfels, TX 78130

**Trial Court:**                      Hon. Dib Waldrip,
374th District Court
Comal County

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................. x

STATEMENT OF THE CASE ...................................................................... xiv

ISSUES PRESENTED .................................................................................. xv

    1.    The standard of review on summary judgment prohibits the trial court's decision, in which a disputed factual question arose regarding the identity of several directly related corporate entities. Because factual disputes require resolution at trial, should the trial court's decision be reversed? ................................................................................. xv

    2.    Strict construction of the deed of trust demands that Appellees follow federal law. As a question of first impression, strict construction should have required the Appellees follow HUD statutes to conduct a face-to-face interview prior to foreclosure. Because a fact issue existed as to whether such interview was required, should the trial court be reversed on summary judgment?................................................. xv

    3.    The standard of review on summary judgment prohibits the trial court's decision, in which a nine-year gap in the chain of title, admitted by Appellees, blocked any claim to the property. Should the trial court be reversed on this issue both as a matter of law and for a factual inquiry at trial? ................................................................................. xv

    4.    Appellee law firm constructed documents during the foreclosure process that did not require the skill of an attorney. Even broadly interpreted, the admissions by BDFTE declared that BDFTE was not "retained" until 2013, more than 10 years after it fabricated the allegedly fraudulent documents. Should the trial court be reversed to determine the nature of the relationship between BDFTE and foreclosing Appellees prior to 2013 under a summary judgment standard of review? ........................................... xv

5. Appellant's live pleading contained a claim under the Texas DTPA tie-in statute. Because the tie-in has no requirement to be brought under its tie-in Code as a "consumer," should the lower court be reversed on summary judgment to permit a trial of the DTPA claim brought through the Finance Code? .................................................. xv

6. The trial court erred in denying the motion to strike the Nurse declaration and other inadmissible documents, under this Court's precedent, because such statements must be made from personal knowledge and none was presented. Should the motion to strike be granted and the case reversed? ............................................................... xv

Issue 1:    Deeds of trust are strictly construed in Texas and have been for more than a century. Because this was a HUD loan that must comply with FHA statutes, the Appellee bank should have conducted face-to-face counseling prior to foreclosure. As both the standard of review and the deed of trust are construed against Appellees below, this Court should reverse the lower court as no Congressionally-mandated counseling occurred prior to foreclosure. ............................................................. 3

Issue 2:    Here, proper evidence submitted below raised a factual question as to the full identity of Citimortgage vs. Citibank as it pertains to federal pre-foreclosure counseling requirements. The trial court should have held the case for trial and this Court should remand for trial on this narrow issue as it applies to the counseling requirement under the summary judgment standard. ......................... 4

Issue 3:    Texas law, being debtor friendly, requires a creditor to prove the entire chain of title when challenged by a debtor. Here, admissions in the record demonstrate a 9-year gap in the chain of title. Given that gap, even on summary judgment, the trial court should have resolved the factual inference in Appellant's favor. Thus, this Court should reverse and remand the case. ......................... 4

Issue 4:        Attorney immunity is not absolute. BDFTE admitted below to only being retained in 2013, which was 10 years after the alleged fraud; however, it was manufacturing documents that did not require the skill of an attorney. The lower court should not have granted summary judgment on this issue. ........................................................ 5

Issue 5:     The DTPA tie-in statutes derive their authority from other sections of the Texas Code. As those sections do not require a party be a "consumer," only a "claimant," the trial court should not have dismissed those claims as a matter of law. ................................................................... 5

Issue 6:     The trial court erred in permitting the Nurse declaration and other conclusory documents when their use contradicts this Court's decision in *Preismeyer v. Pacific Southwest Bank*; namely, the Nurse declarant had no personal knowledge and the affidavits and other documents should have been struck, requiring reversal by this Court. ............................................................................ 5

STANDARD OF REVIEW ................................................................ 7

ARGUMENT ..................................................................................... 8

I.   Texas strictly construes deeds of trust. The trial court failed to apply the standard of review when a factual question arose regarding the relationship between Citibank and Citimortgage as this determined, in part, relevance of federal pre-foreclosure counseling statutes. This Court should reverse the trial court and remand. ........................................... 8

A.    The strict construction of the deed of trust, as well as the standard of review, both favor reversal as they are construed against the Appellees, movants below. ................................ 8

B.    FHA regulations at 24 CFR 203.604 demand a face-to-face interview. This never happened with the Schuetz, an undisputed fact that requires reversal. ........................... 10

2. A fact issue below precluded summary judgment when the Schuetz' supplemental motion showed a question regarding the corporate nature of Citi. ............................................... 13

    A. Appellant Citi offered judicial admissions elsewhere that its identity is a fusion of Citibank and Citimortgage; htus, it is judicially estopped from claiming they are unrelated. ..................................................................................... 13

    B. The Schuetz' affidavits demonstrated the material fact needed to preclude summary judgment. ..................................... 14

3. Texas law permits challenges by debtors to the chain of assignments of an alleged creditor. Here, that challenge revealed a 9-year gap in the chain of title. This Court should reverse the lower court's ruling on summary judgment. ..................................................................................... 15

4. Attorney immunity is not absolute; that counsel below conducted actions for years without being retained, actions that did not *necessarily* require the skill of an attorney did not permit immunity to attach as a matter of law, a situation requiring reversal. ........................................................ 16

5. The DTPA tie-in statutes derive their authority from other sections of the Texas Code. As those sections do not require a party be a "consumer," only a "claimant," the trial court should not have dismissed those claims as a matter of law. ................................................................................ 18

6. The trial court erred in permitting the Nurse declaration and other conclusory documents when their use contradicts this Court's decision in *Preismeyer v. Pacific Southwest Bank*; namely, the Nurse declarant had no personal knowledge and the affidavits and other documents should have been struck, requiring reversal by this Court. ..................................................................................... 18

PRAYER FOR RELIEF ............................................................................... 20

CERTIFICATE OF COMPLIANCE.................................................................21

CERTIFICATE OF SERVICE............................................................................22

## INDEX OF AUTHORITIES

### CASES

*20801, Inc. v. Parker,*
249 S.W.3d 392 (Tex. 2008)................................................................................ 7

*Anderson v. U.S. Dep't of Hous. & Urban Dev.,*
701 F.2d 112 (10th Cir. 1983) ........................................................................... 12

*Austin v. Countrywide Home Loans,*
261 S.W.3d 68 (Tex. App.—Houston [1st Dist.] 2008) ........................................ 16

*Bierwirth v. BAC Home Loans Servicing, L.P.,*
2012 Tex. App. LEXIS 7506 (Tex. App.—Austin 2014)...................................... 18

*Brownlee v. Brownlee,*
665 S.W.2d 111 (Tex. 1984).............................................................................. 22

*Centeq Rlty., Inc. v. Siegler,*
899 S.W.2d 195 (Tex. 1995)................................................................................ 8

*Daughters of Charity Health Servs. of Waco v. Linnstaedter,*
226 S.W.3d 409 (Tex. 2007)................................................................................ 18

*Faine v. Wilson,*
192 S.W. 2d 456 (Tex. App.—Galveston 1946) .................................................. 10

*Fin. Comm'n of Tex. v. Norwood,*
___ S.W.3d ___, 2013 Tex. LEXIS 491, at *4 (Tex. 2013) .................................. 9

*Ford v. Emerich,*
343 S.W. 2d 527 (Tex. App.—Houston 1961, writ ref'd n.r.e.)............................. 9

*Fuller v. O'Neal,*
69 Tex. 349, 6 S.W. 181 (1887)........................................................................... 9

*Gaines v. Hammon,*
358 S.W.2d 557 (Tex. 1962)................................................................................ 8

*Glass v. Carpenter,*
330 S.W.2d 530 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.) .............. 17

*Harrell v. Patel*,
    225 S.W.3d 1 (Tex. App.—El Paso 2005, pet. denied). ........................................ 22

*Henke v. First Southern Properties, Inc*.,
    586 S.W. 2d 617  (Tex. App.—Waco 1979, writ ref'd n.r.e.). ............................. 10

*Leavings v. Mills*,
    175 S.W.3d 301 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ......................... 17

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*,
    289 S.W.3d 844 (Tex. 2009)..................................................................... 7

*Martin v. New Century Mortgage Co.*,
    2012 Tex. App. LEXIS 4705 (Tex. App.—Houston [1st Dist.] 2012).................. 16

*Mers. v. Nebraska Dept. of Finance*,
    704 N.W.2d 784 (Neb. 2005) ................................................................... 17

*Michael v. Crawford*,
    108 Tex. 352, 193 S.W. 1070 (1917)....................................................... 11

*Murchison v. Freeman*,
    127 S.W. 2d 369 (Tex. App.—El Paso 1939, writ ref'd) ..................................... 10

*Perkins v. Sterne*,
    23 Tex. 561, 1859 Tex. LEXIS 106 (Tex. 1859) (same)...................................... 18

*Pope v. Beauchamp*,
    219 S.W. 447 (Tex. 1920)...................................................................... 18

*Priesmeyer v. Pacific Southwest Bank, F.S.B.*,
    917 S.W.2d 937 (Tex. App.—Austin 1996) ..................................................... 16, 22

*Provident Life & Acc. Ins. v. Knott*,
    128 S.W.3d 211 (Tex. 2003)..................................................................... 7

*Radio Station KSCS v. Jennings*,
    750 S.W.2d 760 (Tex. 1988)..................................................................... 22

*Rizkallah v. Conner*,
    952 S.W.2d 580 (Tex. App.—Houston [1st Dist.] 1997). ..................................... 21

*Duty v. Graham*,
      12 Tex. 427 (Tex. 1854) ........................................................................ 18

*Shepard v. Boone*,
      99 S.W.3d 263 (Tex. App.—Eastland 2003) ......................................... 17

*Slaughter v. Qualls*,
      139 Tex. 340 (Tex. 1942) ................................................................ 9, 11

*Taylor v. Brennan*,
      621 S.W.2d 592 (Tex. 1981) .................................................................. 10

*Travelers Ins. Co. v. Joachim*,
      315 S.W.3d 860 (Tex. 2010) .................................................................... 7

*Tri-Cities Const., Inc. v. American Nat. Ins. Co.*,
      523 S.W.2d 426 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ .................. 17

*Turner v. Church of Jesus Christ of Latter-Day Saints*,
      18 S.W.3d 877 (Tex. App.—Dallas 2000, pet. denied) ........................... 8

*University Savings & Loan Ass'n v. Texas Lumber*,
      423 S.W.2d 287 (Tex. 1967) .................................................................. 18

*University Savings Assoc. v. Springwood Shopping Center*,
      644 S.W.2d 705 (Tex. 1982) .................................................................. 10

*West v. First Baptist Church*,
      71 S.W.2d 1090 (Tex. 1934) .................................................................. 18

**STATUTES**

24 C.F.R. §§ 203 ............................................................................... 13, 14
Art. § 51; Decree no. 70 (1829) (State of Coahuila and Texas), reprinted in 1 Early Laws
      of Texas, at 77-78 (St. Louis, The Gilbert Book Co. 1891) .................................. 8

**LEGAL ENCYCLOPEDIAS**

28 Tex. Jur. *Liens* § 16 ......................................................................... 18
30 Tex. Jur. 2d Deeds of Trust and Mortgages § 119 ...................................... 18
30 Tex. Jur. 3d Deeds of Trust and Mortgages § 119 ...................................... 18

**BOOKS**

Margaret Swett Henson, Samuel May Williams: Early Texas Entrepreneur (1976).......... 9

## STATEMENT OF THE CASE

*Nature of the case:*     A homeowner behind on a mortgage sought a modification on a FHA loan. The bank foreclosed. The homeowners alleged failure to comply with federal prerequisites under FHA rules prior to foreclosure, and gaps in the chain of title against the foreclosing bank; document fabrication claims against the law firm, and void sale against the alleged foreclosure purchasers.

*Course of Proceedings:*     The trial court denied the original law firm motion for summary judgment. Then all parties moved in cross-motions for summary judgment.

*Trial Court's Disposition*     The district court signed a final appealable order in favor of Appellees. Appellant filed a notice of appeal, and this case is now properly before this Court.

## ISSUES PRESENTED

1.     The standard of review on summary judgment prohibits the trial court's decision, in which a disputed factual question arose regarding the identity of several directly related corporate entities. Because factual disputes require resolution at trial, should the trial court's decision be reversed?

2.     Strict construction of the deed of trust demands that Appellees follow federal law. As a question of first impression, strict construction should have required the Appellees follow HUD statutes to conduct a face-to-face interview prior to foreclosure. Because a fact issue existed as to whether such interview was required, should the trial court be reversed on summary judgment?

3.     The standard of review on summary judgment prohibits the trial court's decision, in which a nine-year gap in the chain of title, admitted by Appellees, blocked any claim to the property. Should the trial court be reversed on this issue both as a matter of law and for a factual inquiry at trial?

4.     Appellee law firm constructed documents during the foreclosure process that did not require the skill of an attorney. Even broadly interpreted, the admissions by BDFTE declared that BDFTE was not "retained" until 2013, more than 10 years after it fabricated the allegedly fraudulent documents. Should the trial court be reversed to determine the nature of the relationship between BDFTE and foreclosing Appellees prior to 2013 under a summary judgment standard of review?

5.     Appellant's live pleading contained a claim under the Texas DTPA tie-in statute. Because the tie-in has no requirement to be brought under its tie-in Code as a "consumer," should the lower court be reversed on summary judgment to permit a trial of the DTPA claim brought through the Finance Code?

6.     The trial court erred in denying the motion to strike the Nurse declaration and other inadmissible documents, under this

**Court's precedent, because such statements must be made from personal knowledge and none was presented. Should the motion to strike be granted and the case reversed?**

## STATEMENT OF FACTS

Appellants Michael and Jamie Schuetz filed suit alleging wrongful foreclosure for Defendant Citi's failure to conduct counseling face-to-face as required under federal statute. CR.402. Under the Schuetz' theory of recovery, a borrower in default on an FHA loan must receive a face-to-face interview under 24 CFR 203.606 at least 30 days prior to foreclosure. CR.402, 404. Based on this theory of recovery, the foreclosure was void. CR.402, 404.

The Schuetz filed under other claims, identifying that when the foreclosure law firm had conducted actions that, as alleged, did not require the skill of an attorney, that the firm was liable under the Texas Finance Code tie-in statute to the Texas Deceptive Trade Practices Act. CR.403-04. The Schuetz claimed that the attorneys were not retained as legal counsel until after the fraudulent documents were prepared. CR.403.

The Schuetz further claimed violations of Texas Civil Practices & Remedies Code 12.002 and declaratory relief in identifying what is alleged to be a nine (9) year gap in the chain of title.

Appellants also claimed a 9-year gap in the chain of title. CR.399-402. This is because the lawsuit alleges, in the First Amended Petition, that Ginnie Mae (GNMA) had the loan early on in the process and thus no assignments made, or recorded, that purport another owner are or were possible as they had nothing to

1

grant. CR.165-67.

Lastly, Appellants claimed DTPA claims and a claim under the Texas Finance Code. CR.403-04.

The attorney defendants filed a motion for summary judgment which was denied. Then all parties filed cross-motions for summary judgment. CR.2-4 (Docket sheet).

The Schuetz filed affidavits raising a fact issue as to the identity and corporate connectedness of CitiBank and Citimortgage, as well as the location of those entities and the use of each other's facilities and websites. CR.246-264. The affidavits were supplied to the trial court again in the motion for new trial as they had been part of the motions for summary judgment but one internal page was missing from each when efiled. CR.506-525.

## SUMMARY OF THE ARGUMENT

Consumer debtor cases present an undeniable challenge for courts because of the lack of sympathy for a debtor plaintiff in default, who is generally thought undeserving of exacting legal protection having not paid on a debt. Yet even before statehood, though, Texas law showed debtors favor and protection, applying various debtor-friendly common law principles, and strictly requiring creditors to prove their authority to collect and to rigorously follow the law. This is the case here.

**Issue 1:** **Deeds of trust are strictly construed in Texas and have been for more than a century. Because this was a HUD loan that must comply with FHA statutes, the Appellee bank should have conducted face-to-face counseling prior to foreclosure. As both the standard of review and the deed of trust are construed against Appellees below, this Court should reverse the lower court as no Congressionally-mandated counseling occurred prior to foreclosure.**

Texas law strictly construes deeds of trust, and has for more than 125 years. It is a harsh remedy, but in a lien theory state, title remains in the hands of the homeowner who is entitled to have the terms in the deed of trust followed. The power of sale, here, incorporated HUD regulations under federal law that required face-to-face counseling prior to foreclosure. That counseling never happened even though Appellee had several branch locations within the 200 mile limit of Appellant's house. This Court should reverse the lower court because no counseling was attempted.

3

**Issue 2:** **Here, proper evidence submitted below raised a factual question as to the full identity of Citimortgage vs. Citibank as it pertains to federal pre-foreclosure counseling requirements. The trial court should have held the case for trial and this Court should remand for trial on this narrow issue as it applies to the counseling requirement under the summary judgment standard.**

Reversal here turns on one clear, distinct legal question: in the summary judgment context—where inferences are resolved against the non-movant—is it a factual matter whether Citimortgage and Citibank are so closely related as to be considered the same entity when Appellees presented the trial court with evidence of judicial admissions by Appellees that the entities were closely related? The answer is yes, and this ties directly to Issue 1 regarding face-to-face counseling. Thus, the judgment should be reversed and remanded.

**Issue 3:** **Texas law, being debtor friendly, requires a creditor to prove the entire chain of title when challenged by a debtor. Here, admissions in the record demonstrate a 9-year gap in the chain of title. Given that gap, even on summary judgment, the trial court should have resolved the factual inference in Appellant's favor. Thus, this Court should reverse and remand the case.**

Texas follows the common law rule where a debtor may challenge the chain of assignments regarding the right of a party to foreclose. Here, Appellees admit to a 9-year gap in the chain of title. The very motion of Appellees alleges that from 2000 until 2009 the loan was assigned to MERS. But MERS does not and cannot own a loan of a deed of trust. That admission was provided below. That fact can be

4

decided without revisiting this Court's decision in *Bierwirth v. BAC Home Loans Servicing*, but should this Court believe that decision is implicated, it should reverse *Bierwirth*.

**Issue 4:** **Attorney immunity is not absolute. BDFTE admitted below to only being retained in 2013, which was 10 years after the alleged fraud; however, it was manufacturing documents that did not require the skill of an attorney. The lower court should not have granted summary judgment on this issue.**

A bar card, while giving great privilege and requiring high levels of integrity, is not an absolute grant of immunity. When actions taken by a licensed attorney do not require the skill of attorney (i.e., they can be done by non-attorneys without oversight as a matter of law), there is no immunity and the fraud claim should not be dismissed on summary judgment.

**Issue 5:** **The DTPA tie-in statutes derive their authority from other sections of the Texas Code. As those sections do not require a party be a "consumer," only a "claimant," the trial court should not have dismissed those claims as a matter of law.**

Texas consumer protection statutes are broadly construed. Unlike bringing a DTPA claim, a tie-in statute speaks in terms of "claimant" rather than "consumer." The enabling statutes in other parts of the Code, such as the Finance Code, do not require consumer status; thus, the trial court should be reversed as a matter of law.

**Issue 6:** **The trial court erred in permitting the Nurse declaration and other conclusory documents when their use contradicts this Court's decision in *Preismeyer v. Pacific Southwest Bank*; namely, the Nurse declarant had no personal knowledge and the affidavits and other documents should**

**have been struck, requiring reversal by this Court.**

All declarations must be made by personal knowledge. That must be demonstrated by showing how the declarant arrived at that personal knowledge: the basis of that knowledge. The Nurse affidavit clearly lacked that critical part that this Court's precedent requires. This Court should reverse the lower court on the basis of that failed affidavit.

## STANDARD OF REVIEW

A trial court's summary judgment is reviewed de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The evidence presented must be considered by the Court in the light most favorable to the non-movants, i.e., the Schuetz, crediting evidence favorable to the Schuetz if reasonable jurors could, and disregarding evidence contrary to the Schuetz, unless reasonable jurors could not. *see Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The Court must indulge every reasonable inference in favor of the Schuetz, *see Provident Life & Acc. Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003), and resolve any doubts of the existence of a material fact in their favor. *See 20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

There must be **no** issues of material fact. Tex. R. Civ. P. 166a(c). "The purpose of Rule 166a(c)," the Dallas Court of Appeals explained in *Turner v. Church of Jesus Christ of Latter-Day Saints,* 18 S.W.3d 877, 885-86 (Tex. App.—Dallas 2000, pet. denied), citing *Gaines v. Hammon,* 358 S.W.2d 557, 563 (Tex. 1962), "is not to provide either a trial by deposition or a trial by affidavit, but to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and no genuine issue of material fact remains." If a fact issue exists that is raised by the Schuetz in their motion or in defense of Appellees' motions, summary judgment may not issue as a matter of law. *See Centeq Rlty., Inc. v. Siegler*,

899 S.W.2d 195, 197 (Tex. 1995). It is the most important appellate concept. *See*

Jacques L. Wiener, *Ruminations from the Bench: Brief Writing and Oral Argument at the*

*Fifth Circuit*, 70 TUL. L. REV. 187, 189 (1995).

## ARGUMENT

Texas garnered many people at its founding based on its debtor-protective

context. Early immigrants used to flee to Texas to avoid harsh debtor laws for these

protections, writing "G.T.T." (**G**one **T**o **T**exas) on their doors.[1]

**I.    Texas strictly construes deeds of trust. The trial court failed to apply the standard of review when a factual question arose regarding the relationship between Citibank and Citimortgage as this determined, in part, relevance of federal pre-foreclosure counseling statutes. This Court should reverse the trial court and remand.**

   **A.    *The strict construction of the deed of trust, as well as the standard of review, both favor reversal as they are construed against the Appellees, movants below.***

Texas law strictly construes deeds of trust, and has for more than 125 years.

"The course marked out for the trustee to pursue must be strictly followed by him

for the method of enforcing the collection through such deeds is a harsh one. *The*

---

[1] *See, e.g.*, Art. § 51; Decree no. 70 (1829) (State of Coahuila and Texas), reprinted in 1 Early Laws of Texas, at 77-78 (St. Louis, The Gilbert Book Co. 1891) (protecting debtors' homes in Texas from any debts acquired prior to purchase of the land); Margaret Swett Henson, *Samuel May Williams: Early Texas Entrepreneur* 3 (1976) (describing early flight of immigrants in the Panic of 1819, who often scrawled "G.T.T."—Gone to Texas—on their door before they left); *see also Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2013) (discussing the debtor protective context of Texas home lien laws).

8

*grantor of the power is entitled to have his directions obeyed . . . ."*[2] Any irregularity making

the act void passed *no* title.[3] And because Texas is a lien theory state, title remains

in the hands of the homeowner. *Taylor v. Brennan*, 621 S.W.2d 592, 593 (Tex. 1981).

In *University Savings Assoc. v. Springwood Shopping Center*,[4] the Texas Supreme

Court held:

> Texas courts have consistently held that the terms set out in a
> deed of trust must be strictly followed. *Slaughter v. Qualls*, 139 Tex.
> 340, 162 S.W.2d 671 (1942); *Michael v. Crawford*, 108 Tex. 352, 193
> S.W. 1070 (1917). As this Court has stated, "[a] trustee has no power
> to sell the debtor's property, except such as may be found in the deed
> of trust." *Slaughter v. Qualls*, *supra* at 675. . . . . The reason that
> "strictness" is required in following the terms of the power granted by
> the deed of trust is to protect the property of the debtor. *Walker v.
> Taylor*, 142 S.W. 31, 33 (Tex. Civ. App. -- San Antonio 1911, writ
> ref'd). Failure to follow the terms of the deed of trust will give rise to a
> cause of action to set aside the trustee's deed. *Slaughter v. Qualls*, *supra*.[5]

The required strict construction of the Deed of Trust may seem harsh. Strict

construction, though, does not leave the lender without remedies. The lender may

sue on the note or seek a judicial order of foreclosure. It is only the contractual

remedy of non-judicial foreclosure that is lost by the lender's failure to abide by the

---

[2] *Fuller v. O'Neal*, 69 Tex. 349, 6 S.W. 181 (1887) (emphasis added; *see also University
Savings Assoc. v. Springwood Shopping Center*, 644 S.W.2d 705 (Tex. 1982) (same strict
construction); *Slaughter v. Qualls*, 139 Tex. 340 (Tex. 1942) (same); *Ford v. Emerich*,
343 S.W. 2d 527, 531 (Tex. App.—Houston 1961, writ ref'd n.r.e.) (same); *Faine v.
Wilson*, 192 S.W. 2d 456, 458 (Tex. App.—Galveston 1946) (same); *Murchison v.
Freeman*, 127 S.W. 2d 369, 372 (Tex. App.—El Paso 1939, writ ref'd) (same).
[3] *Henke v. First Southern Properties, Inc.*, 586 S.W. 2d 617, 620 (Tex. App.—Waco
1979, writ ref'd n.r.e.).
[4] 644 S.W.2d 705 (Tex. 1982).
[5] *Id.* at 706.

contract.

Thus, if the conditions and limitations on the trustee's power to sell a note and deed of trust at foreclosure, as set forth in the deed of trust, were never fulfilled, then the trustee's power to sell never lawfully came into being, and the foreclosure sale and trustee's deed are void.[6] The trustee must strictly adhere to the terms of the power for the power "admits of no substitution and no equivalent."[7]

The deed of trust, recorded at multiple locations in the record, CR.22-26 wholly incorporates the provisions of FHA and HUD regulations. These demand strict adherence. CR.179-183, esp. 181 at ¶9.d.

## B. FHA regulations at 24 CFR 203.604 demand a face-to-face interview. This never happened with the Schuetz, an undisputed fact that requires reversal.

The Federal Housing Authority (FHA), which was created by the National Housing Act of 1934, "is the largest government insurer of mortgages in the world."[8] The FHA, which is a part of the Department of Housing and Urban Development (HUD), provides mortgage insurance on, *inter alia*, single-family homes made by FHA-approved lenders throughout the United States and its territories.[9]

Under this program, mortgagee/lenders are induced to make essentially risk-

---

[6] *Slaughter v. Qualls*, 162 S.W. 2d 671, 675 (Tex. 1942).
[7] *Michael v. Crawford*, 108 Tex. 352, 193 S.W. 1070 (1917).
[8] http://portal.hud.gov (last visited February 3, 2015).
[9] *Id.*

10

free mortgages by being guaranteed against loss in the event of default by the mortgagor.[10] This program allows mortgagees to offer loans to low-income families at a more favorable rate than would otherwise be available in the market. *Id.* The availability of affordable mortgages, in turn, promotes Congress's "national goal" of "a decent home and suitable living environment for every American family." 12 U.S.C. § 1701t.

Pursuant to the authority conferred by Congress, HUD promulgated regulations pertaining to HUD-insured mortgages. The regulations regarding a mortgagee's servicing responsibilities of such mortgages are codified in Title 24, Part 203 (Single Family Mortgage Insurance), Subpart C (Servicing Responsibilities) ("Subpart C") of the Code of Federal Regulations ("CFR").[11]

In addition, "[i]t is the intent of the Department [HUD] that no mortgagee shall commence foreclosure or acquire title to a property *until the requirements of this subpart [C] have been followed*." [12] To that end, 24 CFR 203.604 mandates that a lender or servicer must provide face-to-face counseling before accelerating a home loan and conducting foreclosure. In relevant part, 203.604 states:

> . . . . The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are

---

[10] *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 701 F.2d 112, 113-14 (10th Cir. 1983).

[11] 24 C.F.R. §§ 203.500-.681.

[12] 24 C.F.R. § 203.500 (emphasis added).

11

unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced, . . . .[13]

Further, this regulation only permits five (5) exceptions, none of which are met here. A face-to-face meeting is not required if (1) the mortgagor does not reside in the property, (2) the property is "not within 200 miles of the mortgagee, its servicer, or a branch office of either," (3) the mortgagor has indicated he will not cooperate in this interview, (4) the mortgagor is consistent with payments on a situational based repayment plan, or (5) a reasonable effort to arrange a meeting is not successful. [14]

Here, the Schuetz resided in the property. No evidence has been offered at this point by Defendant Citi that is has made a reasonable effort to arrange a meeting prior to foreclosure. (Reasonableness is defined as at least one certified letter to the mortgagor and a drive to the residence. *See* 24 C.F.R. 203.604(d).). Neither does Citi have any evidence that Schuetz had indicated they would not cooperate in an interview, nor that Schuetz were consistent with payments on a situational based repayment plan.

Lastly, and most compelling, is the plain evidence in the record that

[13] 24 C.F.R. 203.604(a).
[14] *See* 203.604(c).

Appellee Citi never interviewed nor attempted to contact the Schuetz despite there being multiple branches of Citi 200 miles of the residence. CR. 246-54; 514-25. Citi had the duty and the ability to follow federal law. CR.255-56. For this reason the case should be reversed and remanded.

**2.      A fact issue below precluded summary judgment when the Schuetz' supplemental motion showed a question regarding the corporate nature of Citi.**

In their primary motion, the Schuetz identified to the trial court multiple publicly known locations of Citi branches. CR.246-54; 514-525. At the summary judgment hearing, Appellee's counsel objected as to the separate nature of the entities. The clerk's record provided to Appellant's counsel does not contain any affidavits that refute this fact.

***A.      Appellant Citi offered judicial admissions elsewhere that its identity is a fusion of Citibank and Citimortgage; thus, it is judicially estopped from claiming they are unrelated.***

At the summary judgment hearing Citi attempted to deny there was any relationship between Citibank and Citimortgage. Yet the Schuetz provided to the trial court judicial admissions by Appellee that Citi's business arrangement functionally intertwines Citibank and Citimortgage.[15] This arrangement makes them show up on common "Citi" government HAMP websites,[16] corporate

---

[15] CR.511-513; Supp. CR. (forthcoming by way of a request to the Comal County Clerk).
[16] *Id.*

13

websites,[17] parallel displays within Citi websites showing corporate structure,[18] and they even have mortgage payment options on a common website.[19] This at a minimum raised a fact issue regarding Citi's identity in its circular corporate "family tree," enough to preclude the high burden of summary judgment when construed against Citi both (1) under strict construction of the deed of trust, and (2) the proper application of the standard of review. Further, the motion for new trial also contained Citimortgage's corporate disclosure statement in federal court, in the case of *Debish, et al. v. Fannie Mae and Citimortgage, Inc.*, that its corporate structure and operations are wholly owned by CitiBank, N.A.[20]  This Court should reverse the trial court.

**B.    The Schuetz' affidavits demonstrated the material fact needed to preclude summary judgment.**

Citimortgage has a branch locator online. CR. 515-19. It also has phone reception at its branches where the Schuetz contacted Citimortgage. CR. 515-19. The Schuetz identified thirteen (13) separate locations within 200 miles of their home whereby Citi had a duty to conduct a face-to-face interview. CR.514-25. This at a minimum raised a genuine issue of material fact that precluded summary judgment.

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *See* CR.508, 511-12.

**3. Texas law permits challenges by debtors to the chain of assignments of an alleged creditor. Here, that challenge revealed a 9-year gap in the chain of title. This Court should reverse the lower court's ruling on summary judgment.**

Texas law permits challenging the chain of assignments regarding the right of a party to foreclose.[21] This stems from, in part, the settled Texas precedent following the common law rule where a debtor may bring any ground against an assignee to challenge an assignment as void or invalid.[22] This is true ***regardless*** of whether the Schuetz are third parties to the assignment. *See Priesmeyer v. Pacific Southwest Bank, F.S.B.*, 917 S.W.2d 937 (Tex. App.—Austin 1996). It simply raises a disputed issue of material fact, one which cannot survive the standard of review.

The chain of title has an 9-year gap. CR.187-90. The very motion of Appellees alleges that from 2000 until 2009 the loan was assigned to MERS. But MERS does not and cannot own a loan or a deed of trust. MERS admitted judicially in *MERS v. Nebraska Department of Banking and Finance,* where MERS denied ever having ownership interests in any mortgage note.[23]  Thus, the mortgage could

---

[21] *See Priesmeyer v. Pacific Southwest Bank, F.S.B.*, 917 S.W.2d 937 (Tex. App.—Austin 1996); *see also Martin v. New Century Mortgage Co.*, 2012 Tex. App. LEXIS 4705 (Tex. App.—Houston [1st Dist.] 2012); *Austin v. Countrywide Home Loans*, 261 S.W.3d 68 (Tex. App.—Houston [1st Dist.] 2008); *Leavings v. Mills*, 175 S.W.3d 301 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Shepard v. Boone*, 99 S.W.3d 263 (Tex. App.—Eastland 2003).
[22] *See Tri-Cities Const., Inc. v. American Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ); *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.).
[23] CR. 192-219; *See* 704 N.W.2d 784 (Neb. 2005). Here, MERS stated it could not

15

never have been assigned to MERS.

This Court may require addressing its precedent in *Bierwirth v. BAC Home Loans Servicing, LP*.[24] To the degree this Court believes itself bound by that decision, the Schuetz pray this Court reverse that decision as it contradicts 160 years of Texas case law[25] and all three editions of Texas Jurisprudence,[26] abrogating the common law without any citation to this vast precedent.

**4.      Attorney immunity is not absolute; that counsel below conducted actions for years without being retained, actions that did not *necessarily* require the skill of an attorney did not permit immunity to attach as a matter of law, a situation requiring reversal.**

This Court should follow the learned reasoning of the Dallas Court of Appeals, which explained the analysis well:

> An attorney can be held liable by a third party for actions that are not part of the discharge of his duties to his client. *See Alpert*, 178 S.W.3d at 406; *see also Bradt*, 892 S.W.2d at 71. ***As such, attorneys***

---

acquire mortgage loans.

[24] , 2012 Tex. App. LEXIS 7506 (Tex. App.—Austin 2014).

[25] *See Duty v. Graham*, 12 Tex. 427, 434 (Tex. 1854) ("The assignment of the interest of the mortgagee in the land, without an assignment of the debt, is considered to be without meaning or use."); *see also Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 n.10 (Tex. 2007) (lien is incident to debt); *University Savings & Loan Ass'n v. Texas Lumber*, 423 S.W.2d 287, 292 (Tex. 1967) (assignment is a nullity); *West v. First Baptist Church*, 71 S.W.2d 1090, 1098-1100 (Tex. 1934) (same, "settled principle"); *Pope v. Beauchamp*, 219 S.W. 447, 448-49 (Tex. 1920) (same); *Perkins v. Sterne*, 23 Tex. 561, 1859 Tex. LEXIS 106 (Tex. 1859) (same).

[26] 30 Tex. Jur. 3d *Deeds of Trust and Mortgages* § 119; 30 Tex. Jur. 2d *Deeds of Trust and Mortgages* § 119; 28 Tex. Jur. *Liens* § 16. Each edition states that a deed follows a note and not vice versa.

16

***acting on behalf of their clients are not shielded from liability for their fraudulent conduct*** because fraudulent acts are entirely "foreign to the duties of an attorney." *Poole*, 58 Tex. at 137 (fraudulent assignment of bill of lading); *see also Toles*, 113 S.W.3d at 911-912 (holding that attorney who represented former husband in divorce action was not immune from claim of former wife alleging attorney aided and abetted a breach of fiduciary duty). ***Furthermore, an attorney is also liable if he knowingly enters into a conspiracy to defraud a third person in the course of representing his client.*** *See Likover*, 696 S.W.2d at 472 (conspiracy to defraud purchaser of apartment complex). And under certain circumstances, attorneys may also be liable to a third party for other torts, **[7]** such as negligent misrepresentation, despite the absence of a general negligence duty to non-clients. *See McCamish, Martin, Brown & Loeffler*, 991 S.W.2d at 793-94. ***Thus, if the only ground for summary judgment is attorney immunity, and the plaintiff alleges claims that could arguably involve fraudulent conduct, the trial court should deny a motion for summary judgment based on attorney immunity as to those claims.*** *See Toles*, 113 S.W.3d at 912 (argument that actions were taken during representation of client was not sufficient to support summary judgment on claim for aiding and abetting, breach of fiduciary duty, and conspiracy).[27]

Further, the Houston Court of Appeals (1st Dist.) has never regarded immunity absolute, but only in actions that "***require[]*** the office, professional training, skill, and authority of an attorney the skill of an attorney."[28]

Filing documents, activities identified by Appellee BDFTE at CR. 456, are by no means actions that *require* the skill of an attorney. Thus, the immunity claim should be reversed.

---

[27] *Santiago v. Mackie Wolf Zientz & Mann, P.C.*, 2014 Tex. App. LEXIS 9165, 6-7 (Tex. App. Dallas Aug. 19, 2014) (emphasis added).

[28] *Dixon Fin. Servs. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, 2008 Tex. App. LEXIS 2064, 21-22 (Tex. App. Houston 1st Dist. Mar. 20, 2008) (emphasis added).

17

**5.     The DTPA tie-in statutes derive their authority from other sections of the Texas Code. As those sections do not require a party be a "consumer," only a "claimant," the trial court should not have dismissed those claims as a matter of law.**

Unlike bringing a claim pursuant Texas Business and Commerce Code § 17.50(a), a tie-in claim under 17.50(h) has no requirement that it be brought by a consumer. Section 17.50(h) speaks in terms of a "claimant."[29] There is not a single use of the word "consumer" in subsection (h), but the word "claimant" is used three times.

The Legislature knew what the term "consumer" meant because it was defined within the Act and used so many times, and yet it chose to use another term, "claimant," in granting the enhanced rights of section 17.50 (h). The scheme shows remarkable forethought by the Legislature in that by a change to the enabling language in the tie-in statute, the legislature can and did change who could bring an action and expand or diminish the claims that could be made while still maintaining a basic consumer protection law for the benefit of its citizens. The lower court should have granted a trial on the claim as a matter of law and should be reversed.

**6.     The trial court erred in permitting the Nurse declaration and other conclusory documents when their use contradicts this Court's decision in *Preismeyer v. Pacific Southwest Bank*; namely, the Nurse declarant had no personal knowledge and the affidavits and other documents should have been struck,**

---

[29] *See* TEX. BUS. & COMM. CODE § 17.50(h).

18

**requiring reversal by this Court.**

Affidavits must not only (1) claim to be made on personal knowledge, but also must (2) demonstrate the facts by which the party came to that personal knowledge. "A conclusory statement is one that does not provide the underlying facts to support the conclusion. Conclusory statements in affidavits are not proper as summary judgment proof if there are no facts to support the conclusions. Conclusory statements without factual support are not credible, and are not susceptible to being readily controverted."[30]

Further, "to obtain a summary judgment, affidavit testimony must affirmatively show that it is based on personal knowledge.[31] "The mere recitation that the affidavit is based on personal knowledge is inadequate if the affidavit does not positively show a basis for such knowledge."[32]

Lastly, Exhibits J-4, J-5, and J-6 of Appellee's MSJ were not certified records, were not under seal, and did not come from any Texas entity. They were not admissible.[33] This Court should reverse the trial court's denial of the Schuetz'

---

[30] *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997).

[31] Tex. R. Civ. P. 166a(f); *see Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex. 1984).

[32] *Priesmeyer*, 917 S.W.2d at 939 (finding that bank Vice-President could not opine as to any transfers or assignments generally without proving the basis for personal knowledge of that exact assignment or acquisition)(citing to *Radio Station KSCS v. Jennings,* 750 S.W.2d 760, 761-62 (Tex. 1988).

[33] *See* Tex. R. Civ. P. 166(a)(f) (MSJ proof "shall set forth such facts as would be admissible in evidence"). They are pure hearsay and should not be admitted. *See Harrell v. Patel*, 225 S.W.3d 1, 6 (Tex. App.—El Paso 2005, pet. denied).

motion to strike and reverse the trial court.

## PRAYER FOR RELIEF

Based on the foregoing, this Court should:

➢ Reverse the trial court on the grounds presented herein as a matter of law;

➢ Where factual matters were raised below, this Court should remand for a trial on the merits.

Respectfully submitted,

CASEY LAW OFFICE, P.C.

By:     /s/ Stephen Casey
         Stephen Casey
         State Bar No. 24065015
         stephen@caseylawoffice.us
595 Round Rock West Drive, Suite 102
Round Rock, Texas 78681
Telephone: 512-257-1324
Fax: 512-853-4098

**COUNSEL FOR APPELLANTS**

## CERTIFICATE OF COMPLIANCE

The preceding brief contains 4,493 words within the sections identified under Tex. R. App. P. 9.4, typed upon Microsoft Word for Mac 2011, Baskerville 14 point font.

/s/ Stephen Casey

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Petition for Review and Appendix were served on Monday, November 30, 2015, on the following via electronic transmission and/or first class mail:

>
> John Ellis
> dfoster@lockelord.com
> jellis@lockelord.com
> jthomason@lockelord.com
> LOCKE LORD LLP
> 600 Congress Avenue, Ste 2200
> Austin, TX  78701
>
> Mark Hopkins
> mark@hopkinswilliams.com
> 12117 Bee Caves Road, Ste 260
> Austin, TX 78738
>
> David Pfeuffer
> 170 E. San Antonio Street
> New Braunfels, TX 78130
>
>
> /s/ Stephen Casey

# No. 03-15-00522-CV

## In The Third Court of Appeals

**MICHAEL W. SCHUETZ AND JAMIE K. SCHUETZ,**
*Appellants,*

**v.**

**SOURCE ONE MORTGAGE SERVICES CORPORATION; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; CITIMORTGAGE, INC.; AND BARRETT DAFFIN FRAPPIER TURNER & ENGLE, ROBERT FERGUSON, AND BARBARA FERGUSON,**
*Appellees,*

Appeal from Cause No. C2013-1445C,
274th Judicial District Court, Comal County; Hon. Dib Waldrip, Presiding

# APPELLANTS' APPENDIX

# TABLE OF CONTENTS

**Tab**     **Name**

**A**       Trial Court judgment

**B**       24 CFR 203.604

**C**       Deed of Trust incorporating 24 CFR 203.604

# Tab A

FILED FOR RECORD
At____11:04____o'clock ____M

MAY 2 2 2015

HEATHER N. KELLAR
COMAL COUNTY, TEXAS
BY_____DEPUTY

CAUSE NO. C2013-1445C

| | | |
|---|---|---|
| MICHAEL W. SCHUETZ and | § | IN THE DISTRICT COURT |
| JAMIE K. SCHUETZ, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| SOURCE ONE MORTGAGE SERVICES | § | COMAL COUNTY, TEXAS |
| CORPORATION, MORTGAGE | § | |
| ELECTRONIC REGISTRATION | § | |
| SYSTEMS, INC., CITIMORTGAGE, INC., | § | |
| BARRETT DAFFIN FRAPPIER TURNER | § | |
| & ENGEL, ROBERT FERGUSON, AND | § | |
| BARBARA FERGUSON, | § | |
| *Defendants.* | § | 274TH JUDICIAL DISTRICT |

## FINAL ORDER AND JUDGMENT

On this day, the Court considered the Motion for No Evidence Summary Judgment filed by Defendants Robert Ferguson and Barbara Ferguson ("Fergusons' Motion"), the Traditional and No-Evidence Motion for Summary Judgment and Motion to Sever filed by Defendants CitiMortgage, Inc., individually and as successor by merger to Source One Mortgage Corporation and Mortgage Electronic Registration Systems, Inc. ("CMI and MERS's Motion"), the Second Traditional Motion and First No-Evidence Motion for Summary Judgment filed by Defendant Barrett Daffin Frappier Turner & Engel, LLP ("BDFTE's Motion"), and the Motion for Partial Summary Judgment filed by Plaintiffs Michael W. Schuetz and Jamie K. Schuetz. After careful consideration of the parties' Motions, any timely responses thereto, the competent evidence, all pleadings properly before the Court, the arguments of counsel, if any, and all other matters properly before the Court, the Court is of the opinion that CMI and MERS's Motion, Fergusons' Motion, and BDFTE's Motion should be granted, and Plaintiffs' Motion for Partial Summary Judgment should be denied.

FINAL ORDER AND JUDGMENT
AUS:0518456/00546:581176v1

PAGE 1 OF 3

Therefore, it is ORDERED that CMI and MERS's Motion, Fergusons' Motion, and BDFTE's Motion are GRANTED and Plaintiffs Michael W. Schuetz and Jamie K. Schuetz take nothing by their claims against Defendants CitiMortgage, Inc., individually and as successor by merger to Source One Mortgage Corporation, Mortgage Electronic Registration Systems, Inc., Robert Ferguson, Barbara Ferguson, and Barrett Daffin Frappier Turner & Engel, L.L.P.

It is FURTHER ORDERED that CMI and MERS's Motion to Sever is DENIED as moot.

It is FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment is DENIED.

It is FURTHER ORDERED that all costs are taxed against Plaintiffs.

This judgment finally disposes of all parties and all claims and is appealable.

SIGNED this the 21 day of MAY , 2015.

THE HONORABLE DIB WALDRIP
COMAL COUNTY DISTRICT JUDGE

**AGREED AS TO FORM:**

CASEY LAW OFFICE, P.C.                    HOPKINS & WILLIAMS, P.L.L.C.


_____              _____
Stephen Casey                            Mark D. Hopkins
State Bar No. 24065015                   State Bar No. 00793975
595 Round Rock West Drive, Suite 102     Shelley L. Hopkins
Round Rock, Texas 78681                  State Bar No. 24036497
(512) 257-1324 (Telephone)               12117 Bee Caves Rd., Suite 260
(512) 853-4098 (Facsimile)               Austin, Texas 78738
stephen.casey.law@gmail.com              (512) 600-4320 (Telephone)
*Attorney for Plaintiffs Michael W. Schuetz*   (512) 600-4326 (Facsimile)
*and Jamie K. Schuetz*                   mark@hopkinswilliams.com
                                         shelley@hopkinswilliams.com
                                         *Attorneys for Defendant Barrett Daffin*
                                         *Frappier Turner & Engel, L.L.P.*

LOCKE LORD LLP                           BRAZLE & PFEUFFER


_____              _____
B. David L. Foster                       David G. Pfeuffer
State Bar No. 24031555                   State Bar No. 15888500
John W. Ellis                            170 E. San Antonio Street
State Bar No. 24078473                   New Braunfels, Texas 78130
600 Congress Avenue, Suite 2200          (830) 629-8008 (Telephone)
Austin, Texas 78701                      (830) 629-2161 (Facsimile)
(512) 305-4700 (Telephone)               dpfeuffer@nblawyers.net
(512) 305-4800 (Facsimile)               *Attorney for Defendants Robert Ferguson*
dfoster@lockelord.com                    *and Barbara Ferguson*
jellis@lockelord.com

Robert T. Mowrey
State Bar No. 14607500
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Facsimile)
rmowrey@lockelord.com
*Attorneys for Defendants CitiMortgage, Inc.,*
*Individually and as Successor by Merger to*
*Source One Mortgage Corporation, and*
*Mortgage Electronic Registration Systems, Inc.*

## AGREED AS TO FORM:

**CASEY LAW OFFICE, P.C.**

_(signature)_

Stephen Casey
State Bar No. 24065015
595 Round Rock West Drive, Suite 102
Round Rock, Texas 78681
(512) 257-1324 (Telephone)
(512) 853-4098 (Facsimile)
stephen@caseylawoffice.us
info@caseylawoffice.us
*Attorney for Plaintiffs Michael W. Schuetz*
*and Jamie K. Schuetz*

**HOPKINS & WILLIAMS, P.L.L.C.**

_(signature)_

Mark D. Hopkins
State Bar No. 00793975
Shelley L. Hopkins
State Bar No. 24036497
12117 Bee Caves Rd., Suite 260
Austin, Texas 78738
(512) 600-4320 (Telephone)
(512) 600-4326 (Facsimile)
mark@hopkinswilliams.com
shelley@hopkinswilliams.com
*Attorneys for Defendant Barrett Daffin*
*Frappier Turner & Engel, L.L.P.*

**LOCKE LORD LLP**

B. David L. Foster
State Bar No. 24031555
'ohn W. Ellis
ate Bar No. 24078473
6( ( ongress Avenue, Suite 2200
Aus n, Texas 78701
(512, ?05-4700 (Telephone)
(512) )5-4800 (Facsimile)
dfoster lockelord.com
jellis@lu kelord.com

, nbert T. N iwrey
Si re Bar Nc 14607500
?2L Ross Av iue, S ite 2200
Dall; . Texas 2(
(2 4) , 40-8000 elephone)
(21 ) 7 )-8800 ( csimile)
rmowrey lockelo l.c m
*Attorne s, r Defe 'ai ts CitiMortgage, Inc.,*
*Individu lly nd as u cessor by Merger to*
*Source One ortgag ( rporation, and*
*Mortgage Elec onic A t tration Systems, Inc.*

**BRAZLE & PFEUFFER**

_(signature)_

David G. Pfeuffer
State Bar No. 15888500
170 E. San Antonio Street
New Braunfels, Texas 78130
(830) 629-8008 (Telephone)
(830) 629-2161 (Facsimile)
dpfeuffer@nblawyers.net
*Attorney for Defendants Robert Ferguson*
*and Barbara Ferguson*

**AGREED AS TO FORM:**

CASEY LAW OFFICE, P.C.

_____
Stephen Casey
State Bar No. 24065015
595 Round Rock West Drive, Suite 102
Round Rock, Texas 78681
(512) 257-1324 (Telephone)
(512) 853-4098 (Facsimile)
stephen@caseylawoffice.us
info@caseylawoffice.us
*Attorney for Plaintiffs Michael W. Schuetz and Jamie K. Schuetz*

HOPKINS & WILLIAMS, P.L.L.C.

_____
Mark D. Hopkins
State Bar No. 00793975
Shelley L. Hopkins
State Bar No. 24036497
12117 Bee Caves Rd., Suite 260
Austin, Texas 78738
(512) 600-4320 (Telephone)
(512) 600-4326 (Facsimile)
mark@hopkinswilliams.com
shelley@hopkinswilliams.com
*Attorneys for Defendant Barrett Daffin Frappier Turner & Engel, L.L.P.*

LOCKE LORD LLP

_____
B. David L. Foster
State Bar No. 24031555
John W. Ellis
State Bar No. 24078473
600 Congress Avenue, Suite 2200
Austin, Texas 78701
(512) 305-4700 (Telephone)
(512) 305-4800 (Facsimile)
dfoster@lockelord.com
jellis@lockelord.com

Robert T. Mowrey
State Bar No. 14607500
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Facsimile)
rmowrey@lockelord.com
*Attorneys for Defendants CitiMortgage, Inc., Individually and as Successor by Merger to Source One Mortgage Corporation, and Mortgage Electronic Registration Systems, Inc.*

BRAZLE & PFEUFFER

_____
David G. Pfeuffer
State Bar No. 15888500
170 E. San Antonio Street
New Braunfels, Texas 78130
(830) 629-8008 (Telephone)
(830) 629-2161 (Facsimile)
dpfeuffer@nblawyers.net
*Attorney for Defendants Robert Ferguson and Barbara Ferguson*

# Tab B

each six months. The mortgagee may issue additional or more frequent notices of delinquency at its option.

### § 203.604  Contact with the mortgagor.

(a) [Reserved]

(b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced, or at least 30 days before assignment is requested if the mortgage is insured on Hawaiian home land pursuant to section 247 or Indian land pursuant to section 248 or if assignment is requested under § 203.350(d) for mortgages authorized by section 203(q) of the National Housing Act.

(c) A face-to-face meeting is not required if:

(1) The mortgagor does not reside in the mortgaged property,

(2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,

(3) The mortgagor has clearly indicated that he will not cooperate in the interview,

(4) A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or

(5) A reasonable effort to arrange a meeting is unsuccessful.

(d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the

mortgagor is not residing in the mortgaged property.

(e)(1) For mortgages insured pursuant to section 248 of the National Housing Act, the provisions of paragraphs (b), (c) and (d) of this section are applicable, except that a face-to-face meeting with the mortgagor is required, and a reasonable effort to arrange such a meeting shall include at least one trip to see the mortgagor at the mortgaged property, notwithstanding that such property is more than 200 miles from the mortgagee, its servicer, or a branch office of either. In addition, the mortgagee must document that it has made at least one telephone call to the mortgagor for the purpose of trying to arrange a face-to-face interview. The mortgagee may appoint an agent to perform its responsibilities under this paragraph.

(2) The mortgagee must also:

(i) Inform the mortgagor that HUD will make information regarding the status and payment history of the mortgagor's loan available to local credit bureaus and prospective creditors;

(ii) Inform the mortgagor of other available assistance, if any;

(iii) Inform the mortgagor of the names and addresses of HUD officials to whom further communications may be addressed.

(Approved by the Office of Management and Budget under control number 2502–0340)

[41 FR 49736, Nov. 10, 1976, as amended at 51 FR 21873, June 16, 1986; 52 FR 48202, Dec. 21, 1987; 53 FR 9869, Mar. 28, 1988; 61 FR 35019, July 3, 1996; 61 FR 36266, July 9, 1996]

### § 203.605  Loss mitigation performance.

(a) *Duty to mitigate.* Before four full monthly installments due on the mortgage have become unpaid, the mortgagee shall evaluate on a monthly basis all of the loss mitigation techniques provided at § 203.501 to determine which is appropriate. Based upon such evaluations, the mortgagee shall take the appropriate loss mitigation action. Documentation must be maintained for the initial and all subsequent evaluations and resulting loss mitigation actions. Should a claim for mortgage insurance benefits later be filed, the mortgagee shall maintain this documentation in the claim review

247

file under the requirements of § 203.365(c).

(b) *Assessment of mortgagee's loss mitigation performance.* (1) HUD will measure and advise mortgagees of their loss mitigation performance through the Tier Ranking System (TRS). Under the TRS, HUD will analyze each mortgagee's loss mitigation efforts portfolio-wide on a quarterly basis, based on 12 months of performance, by computing ratios involving loss mitigation attempts, defaults, and claims. Based on the ratios, HUD will group mortgagees in four tiers (Tiers 1, 2, 3, and 4), with Tier 1 representing the highest or best ranking mortgagees and Tier 4 representing the lowest or least satisfactory ranking mortgagees. The precise methodology for calculating the TRS ratios and for determining the tier stratification (or cutoff points) will be provided through FEDERAL REGISTER notice. Notice of future TRS methodology or stratification changes will be published in the FEDERAL REGISTER and will provide a 30-day public comment period.

(2) Before HUD issues each quarterly TRS notice, HUD will review the number of claims paid to the mortgagee. If HUD determines that the lender's low TRS score is the result of a small number of defaults or a small number of foreclosure claims, or both, as defined by notice, HUD may determine not to designate the mortgagee as Tier 3 or Tier 4, and the mortgagee will remain unranked.

(3) Within 30 calendar days after the date of the TRS notice, a mortgagee that scored in Tier 4 may appeal its ranking to the Deputy Assistant Secretary for Single Family or the Deputy Assistant Secretary's designee and request an informal HUD conference. The only basis for appeal by the Tier 4 mortgagee is disagreement with the data used by HUD to calculate the mortgagee's ranking. If HUD determines that the mortgagee's Tier 4 ranking was based on incorrect or incomplete data, the mortgagee's performance will be recalculated and the mortgagee will receive a corrected tier ranking score.

(c) *Assessment of civil money penalty.* A mortgagee that is found to have failed to engage in loss mitigation as re-quired under paragraph (a) of this section shall be liable for a civil money penalty as provided in § 30.35(c) of this title.

[70 FR 21578, Apr. 26, 2005]

§ 203.606  Pre-foreclosure review.

(a) Before initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met. The mortgagee may not commence foreclosure for a monetary default unless at least three full monthly installments due under the mortgage are unpaid after application of any partial payments that may have been accepted but not yet applied to the mortgage account. In addition, prior to initiating any action required by law to foreclose the mortgage, the mortgagee shall notify the mortgagor in a format prescribed by the Secretary that the mortgagor is in default and the mortgagee intends to foreclose unless the mortgagor cures the default.

(b) If the mortgagee determines that any of the following conditions has been met, the mortgagee may initiate foreclosure without the delay in foreclosure required by paragraph (a) of this section:

(1) The mortgaged property has been abandoned, or has been vacant for more than 60 days.

(2) The mortgagor, after being clearly advised of the options available for relief, has clearly stated in writing that he or she has no intention of fulfilling his or her obligation under the mortgage.

(3) The mortgaged property is not the mortgagor's principal residence and it is occupied by tenants who are paying rent, but the rental income is not being applied to the mortgage debt.

(4) The property is owned by a corporation or partnership.

[52 FR 6915, Mar. 5, 1987, as amended at 61 FR 35020, July 3, 1996]

§ 203.608  Reinstatement.

The mortgagee shall permit reinstatement of a mortgage, even after the institution of foreclosure proceedings, if the mortgagor tenders in a lump sum all amounts required to bring the account current, including

# Tab C



DOC# 9806017690

When Recorded Mail To:
FIRST GUARANTY FINANCIAL CORPORATION
1114 LOST CREEK BOULEVARD, SUITE G40
AUSTIN, TEXAS 78746

4880 SCHUETZ
Loan Number 70124283-7
Case Number 495-508589-8-703

——————————— [Space Above This Line For Recording Data] ———————————

## DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on JULY 23, 1998. The grantor is MICHAEL W. SCHUETZ AND WIFE, JAMIE K. SCHUETZ ("Borrower"). The trustee is GREGORY L. GREGG, whose address is 1700 WEST LOOP SOUTH, SUITE 260, HOUSTON, TEXAS 77027 ("Trustee"). The beneficiary is FIRST GUARANTY FINANCIAL CORPORATION, which is organized and existing under the laws of THE STATE OF TEXAS, and whose address is 1114 LOST CREEK BOULEVARD, SUITE G40, AUSTIN, TEXAS 78746 ("Lender"). Borrower owes Lender the principal sum of ONE HUNDRED TEN THOUSAND FIVE HUNDRED SEVENTY-THREE AND 00/100ths Dollars (U.S.$110,573.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on AUGUST 1, 2028. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in COMAL County, Texas:

LOT FIFTEEN (15), BLOCK TWO (2), RIVERTREE SUBDIVISION UNIT I, SITUATED IN THE CITY OF NEW BRAUNFELS, COMAL COUNTY, TEXAS, ACCORDING TO PLAT THEREOF RECORDED IN VOLUME 8, PAGE 267-268, MAP AND PLAT RECORDS OF COMAL COUNTY, TEXAS.

which has the address of     1035 RUNNING RIVER, NEW BRAUNFELS,       [City]
                  [Street]

Texas           78130        ("Property Address");
               [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance, and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

FHA Texas Deed of Trust - 6/96



Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq, and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within sixty (60) days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to sixty (60) days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If after complying with all applicable statutory notice provisions Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorney's fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Page 4 of 5
GV2003-4                                                                          FHA Texas Deed of Trust - 6/96



If the Property is sold pursuant to this Paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Substitute Trustee. Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts acquired by Lender by assignment or are released by the holder thereof upon payment.

22. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

23. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.[Check applicable box(es)]

☐ Condominium Rider      ☐ Growing Equity Rider      ☐ Other [Specify]

☒ Planned Unit Development Rider      ☐ Graduated Payment Rider

24. Purchase Money; Vendor's Lien; Renewal and Extension. [Complete as appropriate]
Vendor's Lien: The Note secured hereby is primarily secured by the Vendor's Lien retained in the Deed of even date herewith conveying the Property to Borrower, which Vendor's Lien has been assigned to Lender, this Deed of Trust being additional security therefor.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

......................................(Seal)      ......................................(Seal)
MICHAEL W. SCHUETZ      -Borrower      JAMIE K. SCHUETZ      -Borrower

......................................(Seal)      ......................................(Seal)
-Borrower      -Borrower

......................................(Seal)      ......................................(Seal)
-Borrower      -Borrower

———————————— [Space Below This Line For Acknowledgment] ————————————

STATE OF TEXAS, ..BEXAR................................ COUNTY ss:

The foregoing instrument was acknowledged before me this ..24th. day of ..July...................., 19.98...., by MICHAEL W. SCHUETZ and JAMIE K. SCHUETZ .

My Commission Expires:            ....C. Marie Pethick..............
                                                      Notary Public

C. MARIE PETHICK
Notary Public, State of Texas
My Commission Expires 07 01 200